IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TAYLOR ATKINS,

    Plaintiff,

v.                                                                        No. 16-1205

TOWN OF GIBSON, TENNESSEE, *et al.*,

    Defendants.

___

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS
___

*INTRODUCTION*

This action was brought on July 12, 2016, by the Plaintiff, Taylor Atkins, against the Defendants, Town of Gibson, Tennessee ("Gibson"); Tony Black, individually and in his official capacity as Gibson mayor, and Charles Summer, Billy Loflin, Danny Gant, Josh Meales, Clyde Frye and Chris Houk, individually and in their official capacities as aldermen of Gibson, seeking damages and declaratory and injunctive relief for violation of his rights under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. He also asserted state law claims under the Tennessee Public Protection Act, Tennessee Code Annotated § 50-1-304 ("TPPA"); the Public Employee Political Freedom Act of 1980, Tennessee Code Annotated § 8-50-602 ("PEPFA"); Tennessee Code Annotated §§ 38-8-304 and -305 pertaining to the discipline of police officers; and Tennessee common law. Before the Court is the Defendants' motion to dismiss portions of the complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 9.)

1

*STANDARD OF REVIEW*

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In determining whether dismissal under the rule is appropriate, the court must view the complaint in the light most favorable to the plaintiff, accept the pleading's allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gavitt v. Born*, ___ F.3d ___, 2016 WL 4547258, at *10 (6th Cir. Sept. 1, 2016). The "complaint must state a claim to relief that rises above the speculative level and is plausible on its face." *Luis v. Zang*, ___ F.3d ___, 2016 WL 4363151, at *3 (6th Cir. Aug. 16, 2016) (quoting *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)) (internal quotation marks omitted), *reh'g & reh'g en banc denied* (Sept. 16, 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[I]f it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle [him] to relief, then dismissal is proper." *Smith v. Lerner, Sampson & Rothfuss, L.P.A.*, ___ F. App'x ___, 2016 WL 4269803, at *3 (6th Cir. Aug. 15, 2016) (internal alterations omitted).

*FACTS ALLEGED*

The following allegations are set forth in the complaint and, for purposes of this motion, taken as true. Atkins began working as chief of police for the Gibson Police Department on or about November 2007 and served in that capacity until his termination on December 22, 2015. Prior to that employment, he worked as a deputy for the Gibson County Sheriff's Department under the predecessor of Paul Thomas, who was elected sheriff in August 2014.

2

At some time prior to November 11, 2015, television station WBBJ in Jackson, Tennessee, which serves the area of western Tennessee that includes Gibson, published a story about two inmates who had escaped from the Gibson County jail. On November 11, 2015, Atkins posted pictures from the story on his Facebook page along with the statement, "why is this happening, this didn't used to happen." (D.E. 1 at PageID 5.) Later that day, Plaintiff was contacted by Black, who advised that Sheriff Thomas was unhappy about the post. Thomas requested the mayor to make Atkins remove the posting from his Facebook page. When Plaintiff refused, the mayor replied, "go ahead and call [your] attorney." (*Id.*)

Subsequent to the conversation, Black became hostile, stopped communicating with Atkins concerning town business, and began supervising and directing Gibson police officers without consulting or involving the Plaintiff. The mayor also met privately with the Defendant aldermen to encourage them to terminate his employment in retaliation for the post.

Throughout his tenure as mayor, Black performed contract work for Gibson, often through a business that he owned, Black HVAC, without first submitting the work for bids by other contractors in violation of city ordinance and state law. He also forced city employees to illegally perform work for various individuals that had nothing to do with city business. On more than one occasion, Atkins advised Black that this conduct was prohibited.

On December 21, 2015, the mayor called a special meeting of the Gibson board of aldermen for the sole purpose of orchestrating the termination of Plaintiff's employment for the Facebook post and/or refusing to remain silent about Black's illegal activities. The aldermen voted to fire Atkins without providing him an opportunity to challenge the action.

## *THE MOTION TO DISMISS AND ANALYSIS*

The Defendants request dismissal of (1) the official capacity claims against the individual Defendants; (2) claims against Gibson and (3) claims pursuant to state law. The movants also seek an award of sanctions against the Plaintiff for filing a frivolous claim under the TPPA.

<u>Federal Claims.</u>

### *Section 1983 Generally*

Section 1983 provides a private right of action against any person who subjects "any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights[ or] privileges . . . secured by the Constitution and laws[.]" 42 U.S.C. § 1983; *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). The statute "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Okla. City v. Tuttle*, 471 U.S. 808 (1985)). In order to prevail on a § 1983 claim, "a plaintiff must prove that he or she was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law." *France v. Lucas*, ___ F.3d ___, 2016 WL 4655743, at *8 (6th Cir. Sept. 7, 2016) (citing *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015)).

### *Official Capacity Claims*

As noted above, the individual Defendants have been sued in their official and individual capacities. The movants seek dismissal of the former, as "[a]n official-capacity claim against a person is essentially a claim against the municipality." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). In responding to the motion, the Plaintiff concedes these claims are redundant and dismissal is appropriate. Accordingly, the official capacity claims are DISMISSED.

*Claims against the Municipality*

The Defendants argue in their motion to dismiss that Atkins has failed to sufficiently allege a municipal liability claim.[1] A municipal defendant may only be liable under § 1983 "if a custom, policy, or practice attributable to the municipality was the moving force behind the violation of the plaintiff's constitutional rights." *Gohl v. Livonia Pub. Schs. Sch. Dist.*, ___ F.3d ___, 2016 WL 4698279, at *8 (6th Cir. Sept. 8, 2016) (quoting *Heyerman v. City of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)) (internal quotation marks omitted). "[A] municipality is liable under § 1983 only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'caused'" the violation of plaintiff's constitutional rights. *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir.) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)) (internal alteration omitted), *cert. denied,* 135 S. Ct. 758 (Dec. 8, 2014). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "[P]olicy or custom does not have to be written law; it can be created by those whose edicts or acts may fairly be said to represent official policy." *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010) (quoting *Monell*, 436 U.S. at 694) (internal quotation marks omitted). "[M]unicipal liability may be imposed for a single decision by municipal policymakers." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). *Respondeat superior* or vicarious liability will not establish a claim for damages against

---

[1]The movants do not in the instant motion challenge the complaint's allegations of a constitutional violation by the municipality. Thus, the Court will not address that issue.

5

a municipality under § 1983. *Garner v. Harrod*, ___ F. App'x ___, 2016 WL 3774062, at *4 (6th Cir. July 15, 2016).

The complaint alleged that Gibson and Black, in his capacity as mayor and policymaker for the municipality, retaliated against Atkins for engaging in protected speech under the First Amendment. The Court finds that Plaintiff has alleged sufficient facts to state a claim against Gibson that is plausible on its face. *See Paige*, 614 F.3d at 284 (allegation that county official had final policymaker authority for defendant county board of commissioners and port authority sufficient to survive Rule 12(b)(6) motion, as "[u]nder *Monell* and *Pembaur*, [her] authority to create policy for the [b]oard and [p]ort [a]uthority means that her actions can represent official policy"); *Sims v. Bd. of Educ. of Winton Woods Sch. Dist.*, Case No. 1:16-CV-281, 2016 WL 4440251, at *3 (S.D. Ohio Aug. 23, 2016) (complaint alleging that board of education's director of student services was the final policymaker for the school board with regard to assessing plaintiff student's needs passed muster under Rule 12(b)(6)). While more will be necessary to resolve the factual issues raised in this case at summary judgment or at trial, Atkins' allegations meet the requirements of *Monell* and *Pembaur* at the pleading stage. *See Paige*, 614 F.3d at 284.

<u>State Law Claims.</u>

*Claims under the Tennessee Governmental Tort Liability Act; Tennessee Code Annotated § 38-3-301, et seq.; and the TPPA*

The movants seek dismissal of Atkins' claims of retaliatory discharge under Tennessee common law pursuant to the Tennessee Governmental Tort Liability Act ("GTLA") and of violations of Tennessee Code Annotated § 38-8-301, *et seq.* In response, the Plaintiff advises that he has not alleged such claims. Accordingly, the motion to dismiss these allegations is denied as moot. The Defendants also request that the TPPA claims be dismissed. In light of

Atkins' statement to the Court that he consents to such dismissal, the motion to dismiss the TPPA claim is granted. Further, based upon his agreement to dismiss the TPPA claims, the Court assumes the Defendants' request for imposition of sanctions with respect to those claims is moot.

*PEPFA*

PEPFA prohibits public employers from "disciplin[ing], threaten[ing] to discipline or otherwise discriminat[ing] against an employee because such employee exercised that employee's right to communicate with an elected public official." Tenn. Code Ann. § 8-50-603(a). The purpose of the statute, as explained by the Tennessee Court of Appeals, was to

> insure free and uninhibited communication between persons employed in government and their respective elected officials. Obviously, the Legislature recognized that such communication can inure to the public good and assist in operating economical and efficient public offices. The Act seeks to prevent public employers from disciplining or otherwise discriminating against public employees for communicating with elected public officials. . . . [T]he purpose of the Act is to facilitate free and open communication between public employees and elected officials by deterring the public employer from taking discriminatory actions against an employee because of such communication.

*Pewitt v. Buford*, C.A. No. 01A01-9501-CV-00025, 1995 WL 614327, at *5 (Tenn. Ct. App. Oct. 20, 1995). To show a violation of the statute, a plaintiff must demonstrate

> (1) the plaintiff's status as an employee of the defendant; (2) that the plaintiff communicated with an elected official; (3) that the employer disciplined, threatened to discipline, or otherwise took an adverse action against the employee; and (4) that the communication with an elected public official was a substantial motivating factor in the adverse action taken by the employer.

*Heriges v. Wilson Cnty., Tenn.*, No. 3:09-0362, 2010 WL 2507764, at *9 (M.D. Tenn. June 18, 2010).

As the complaint alleged violation of the statute by the "Defendants," the Court must at the outset clarify against whom the claim may be brought. "It is well-settled that a PEPFA claim

7

cannot be brought against an official in his individual capacity and must be brought against a public entity, regardless of the merits of the claim. *Id.* Accordingly, to the extent Plaintiff intended to seek damages against any Defendant other than Gibson, those claims must be dismissed. *See id.* (PEPFA claims against municipal official in his individual capacity should be dismissed).

It is the position of Gibson that Atkins has failed to allege the second element of a PEPFA claim as to the Facebook post and the fourth element with respect to his November 11, 2015, telephone conversation with Black. The movant first avers that the Facebook posting did not constitute a "communication" with an elected official, citing to *Todd v. Shelby County*, 407 S.W.3d 212, 227 (Tenn. Ct. App. 2012), *appeal denied* (June 13, 2013), in which the court found the second element had not been established where the plaintiff failed to show that the email in which she expressed her concerns was sent directly to the mayor or that he ever read or knew about it. In response to this assertion, Atkins refers the Court to his allegations concerning the November 11, 2015, phone call, from which the Court infers that he did not intend to allege that the posting constituted a "communication" for PEPFA purposes or, thus, formed the basis for a claim under the statute.

Turning to the telephone communication, Gibson submits that Atkins has failed to allege that he was fired *because* of the conversation. To make this showing, the plaintiff bears the burden of establishing that the discriminatory action "resulted from the public employee's communication with an elected officer." *Todd*, 407 S.W.3d at 227. "In short, there must be some evidence of a causal connection between the communication and the termination of employment." *Id.* The Plaintiff maintains that he communicated with Black, an elected official, presumably by refusing to remove the Facebook post, and was terminated for that

communication. At this early point in the litigation, the Court is unconvinced that dismissal of this claim is appropriate.

## *CONCLUSION*

For the reasons articulated herein, the motion to dismiss is GRANTED IN PART AND DENIED IN PART. Specifically, all official capacity claims against the individual Defendants are DISMISSED, as are Plaintiff's individual capacity claims under PEPFA. Atkins' TPPA claims are also DISMISSED and the Defendants' request for imposition of sanctions for filing a frivolous claim thereunder is moot. The motion to dismiss claims of retaliatory discharge pursuant to the GTLA and violation of Tennessee Code Annotated § 38-8-301, *et seq.,* is DENIED as moot. Finally, the motion to dismiss Plaintiff's claims against Gibson for violation of § 1983 and PEPFA is DENIED.

IT IS SO ORDERED this 6th day of October 2016.

                                                s/ J. DANIEL BREEN
                                                CHIEF UNITED STATES DISTRICT JUDGE